UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SANTANDER CONSUMER USA, INC., <br><br> Plaintiff, <br> v. <br><br> THE HARRISBURG PARKING AUTHORITY and DON'S & SONS, INC., d/b/a DON'S TOWING, <br><br> Defendants. | (Electronically Filed) <br><br> Civil Case No.: <br><br> **COMPLAINT** |

Plaintiff, Santander Consumer USA, Inc. ("SANTANDER"), as and for its Complaint against Defendants, The Harrisburg Parking Authority ("HPA") and Don's & Sons, Inc. d/b/a Don's Towing ("DON'S TOWING"), alleges:

## NATURE OF ACTION

1. HPA regularly seizes vehicles as part of its law enforcement activity but has no constitutionally appropriate procedure for disposing of seized vehicles consistent with the basic due process requirements of notice and a hearing. Instead, HPA employs the outdated and constitutionally unsound practice of summarily turning over control seized vehicles to the private company that towed and stored the vehicle when HPA seized it. In this regard, HPA's policy is to enlist a garage to tow and store vehicles and allow those garages to lien and/or sell the vehicle as a means to cover the costs of towing and storage.

2. HPA's policy and practice of summarily turning over seized vehicles to private tow companies is a joint enterprise from which HPA benefits by avoiding the cost of preserving the seized vehicles and by avoiding the cost of having to pay for towing services, because the tow company accepts the vehicle as compensation for the services it renders to HPA in lieu of money. The tow company benefits by using its control over the vehicle (created under mantle of

authority from HPA) to profit by selling the vehicle or by conditioning release of the vehicle upon payment of money to the tow company.

3. Here, after seizing a vehicle on which Santander holds a lien, HPA afforded no due process to Santander and instead summarily disposed of its interests in that vehicle by giving it to Don's Towing as payment for the services that HPA had contracted Don's Towing to provide. Don's Towing accepted the vehicle from HPA as compensation, asserted an *ex parte* lien for those services, demanded that Santander satisfy that *ex parte* lien—which Don's Towing insisted took priority over Santander's lien—before it would relinquish possession of Santander's collateral. At no time was Santander afforded notice, a hearing, or just compensation for HPA's taking of Santander's collateral.

## JURISDICTION AND VENUE

4. This is a civil rights action pursuant to 42 U.S.C. §§ 1983 and 1988 for deprivation of Santander's rights secured by the Fourth, Fifth and the Fourteenth Amendments to the United States Constitution, and accordingly jurisdiction is conferred on this Court by 28 U.S.C. §§ 1343(a)(3) and 1343(a)(4), as well as 28 U.S.C. § 1331.

5. The remaining causes of action are appropriate pursuant to 28 U.S.C. § 1367 for interrelated state law claims that arise from the occurrences giving rise to the Federal claims, which have a common nucleus of operative fact.

6. Venue lies in the Court pursuant to 28 U.S.C. § 1391), because the Defendants reside in this district, and 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

**PARTIES**

7. Plaintiff Santander is a corporation incorporated in the State of Illinois in the business of taking assignments of retail installment contracts and holding the associated lien interests in vehicles, including being the duly perfected lienholder in the vehicle, which is the subject of this action, a 2019 Ram bearing VIN: 1C6RR7TT2KS710656 (the "Vehicle").

8. Defendant HPA is an incorporated authority organized and existing under the laws of the Commonwealth of Pennsylvania and managed by a board of directors appointed by the Mayor of The City of Harrisburg. HPA controls the enforcement of outstanding parking citations issued within the boundaries of The City of Harrisburg.

9. Defendant Don's Towing is, upon information and belief, a corporation incorporated in the Commonwealth of Pennsylvania which is engaged in the business of towing and storing motor vehicles.

**FACTS**

**Santander's interest in the Vehicle**

10. Santander holds a duly perfected security interest in the Vehicle.

11. Before October 23, 2023, and before any other facts relevant to this action, non-party Courtney White (the "Customer") entered into a retail installment contract to finance the purchase of the Vehicle, which contract was assigned to Santander. By virtue of that transaction, Santander obtained its perfected security interest in the Vehicle.

12. Before, on, and after October 23, 2023, Santander held and continues to hold a first priority lien interest in the Vehicle, which has been duly recorded on the title to the Vehicle.

13. Before October 23, 2023, the Customer defaulted on the payment obligations under the retail installment contract, thereafter, entitling Santander to immediate possession of the Vehicle.

14. By virtue of HPA's seizure of the Vehicle, and by virtue of amounts Don's Towing claimed by way of possessory lien on the Vehicle, the Customer was also and further in non-monetary default of the terms of the retail installment contract, thereafter, also further entitling Santander to immediate possession of the Vehicle.

**HPA seized the Vehicle, in which Santander held a protected interest, and gave it to Don's Towing for disposal**

15. On or about October 23, 2023, Don's Towing actively and regularly towed and stored vehicles at the direction of HPA police officers acting in the regular course of their duties as law enforcement officers.

16. On or about October 23, 2023, HPA took custody of the Vehicle and instructed Don's Towing to tow it from the roadway and store it at HPA's direction.

17. Santander had no involvement with or knowledge of the operation of the Vehicle at the time it was seized by HPA and/or Don's Towing.

18. After October 23, 2023, Santander discovered that the Vehicle had been impounded.

19. Upon learning that the Vehicle was impounded, Santander demanded that the Vehicle be released to it, and Don's Towing refused unless Santander paid the fees demanded by Don's Towing in order to recover the Vehicle.

20. When Santander contacted Don's Towing to recover the Vehicle, Don's Towing demanded payment of towing and storage charges in the amount of $4,150.00 as a condition for release of the Vehicle.

21. Don's Towing asserted that it was able to detain the Vehicle from Santander because Don's Towing claimed a lien on the Vehicle for towing and storage charges.

22. There is no law which requires Santander to pay HPA's towing and storage bill for Don's Towing's alleged services.

23. To the extent HPA or Don's Towing seek to rely on any Pennsylvania state law or local ordinance to justify their conduct, these laws are unconstitutional as applied to the circumstances.

24. Santander then contacted HPA and demanded possession of the vehicle. HPA refused to release the vehicle unless Santander paid HPA $8,600.00 for parking tickets allegedly charged to the vehicle, as well as Don's Towing's fees as demanded.

25. Santander did not pay the fees demand by HPA and Don's Towing, and HPA and Don's Towing refused to release the Vehicle to Santander.

26. HPA benefited from Don's Towing's detention of the Vehicle to secure payment, in that HPA obtained Don's Towing's impound storage services, as well as Don's Towing's towing services to clear the roadway, with no payment (or reduced payment) of money from HPA to Don's Towing.

27. Don's Towing only possessed the Vehicle by virtue of its relationship with HPA and acted in concert with HPA to seize, detain and dispose of the Vehicle. Don's Towing had no other right to remove the Vehicle from the roadway and hold it against anyone. Don's Towing was, therefore, acted under color of law when it towed, stored and/or disposed of the Vehicle.

**HPA's and Don's Towing's regular policies, customs and/or practices which were applied to the Vehicle**

28. HPA and Don's Towing's conduct in relation to Santander and the Vehicle on and after October 23, 2023, comported with both HPA's and Don's Towing's regular policies,

customs and/or practices for the handling of Vehicles encountered and impounded under the same or similar circumstances.

29. HPA carries out its essential functions through its own enforcement officers, who, among other things, seize vehicles for a variety of reasons including parking violations.

30. HPA delegates a portion of the performance of these essential functions to Don's Towing. Specifically, HPA police utilize Don's Towing to tow away, store and dispose of vehicles seized by HPA acting in the course of their duties as law enforcement officers. In essence, Don's Towing is HPA's vehicle impound contractor for the area relevant to this action.

31. Pursuant to this relationship, HPA exercises governmental authority to seize vehicles in concert with Don's Towing.

32. Regardless of the reason for HPA's initial seizure of a given vehicle, HPA does not return those vehicles to a person with a preexisting property interest when the justification for HPA's seizure has passed. Instead, HPA places seized vehicles in the possession of its tow operators, including Don's Towing, for storage and ultimate disposal, permitting the assertion of an *ex parte* possessory lien to secure payment of charges relating to the towing, storage, and disposal.

33. Don's Towing accepts the seized vehicles from HPA—which vehicles HPA does not own—as either partial or total payment for the towing and storage services Don's Towing provides to HPA.

34. Rather than receiving monetary compensation from HPA for the services HPA has contracted Don's Towing to provide, Don's Towing instead impresses an *ex parte* possessory lien for towing and storage fees, which it claims supersedes any other persons' rights in these vehicles.

35. After assessing an *ex parte* possessory lien on impounded vehicles, HPA and Don's Towing refuse to return possession of the vehicles to any other person, even those with pre-existing property rights in the vehicles, while claiming additional daily storages charges.

36. To effectuate eventual disposal of an impounded vehicle, the Defendants threaten to sell the vehicle unless its demands are met.

37. To effectuate eventual disposal of an impounded vehicle, Defendants insist persons with preexisting property interests satisfy Defendant's *ex parte* possessory lien, and further asserts that if this unilateral condition is not satisfied, Defendants can take title to the impounded vehicles and eliminate all other persons interest in those vehicles.

38. HPA benefits from Don's Towing's assertion of an *ex parte* lien on, and eventual sale of, seized vehicles. Without Don's Towing's conduct, HPA would be forced to pay monetary consideration to Don's Towing for the services Don's Towing provides HPA instead of compensating Don's Towing with possession and authority to assert a lien on the impounded vehicles. Moreover, upon information and belief, Don's Towing pays a portion of the proceeds it obtains from others back to HPA as part of its agreement(s) with HPA.

39. It is HPA's and Don's Towing's regular policy and custom, in the course of the above-described conduct, to not obtain a warrant for any of the following actions (for which no valid exception to the warrant requirement exists):

   A. The initial seizure of a vehicle;

   B. The turnover of possession of a vehicle to Don's Towing;

   C. The decision by HPA and/or Don's Towing to continue to detain vehicles after the initial reason for the seizure has passed;

   D. The decision of Don's Towing to assert an *ex parte* possessory lien and the amount of that lien;

7

  E. Don's Towing acting to acquire ownership by terminating all property interests in vehicles; and

  F. The eventual sale of vehicles.

40. Even if the initial seizure of the vehicles in question were made under a valid exception to the Fourth Amendment's warrant requirement, a (possibly) valid initial warrantless seizure does not justify any action HPA or Don's Towing decide to take thereafter, as referenced in ¶ 39 (B-F), *supra*. Rather, HPA and Don's Towing's subsequent actions render the seizures unreasonable in their manner of execution, even if done with an initially valid exception to the warrant requirement.

41. It is also HPA's and Don's Towing's regular policy and custom, in the course of the above-described conduct, to not provide any form of constitutionally adequate notice, nor any hearing whatsoever, in relation to any of the following actions:

  A. The initial seizure of a vehicle;

  B. The turnover of possession of a Vehicle to Don's Towing;

  C. The decision by HPA and/or Don's Towing to continue to detain vehicles after the initial reason for the seizure has passed;

  D. The decision of Don's Towing to assert an *ex parte* possessory lien and the amount of that lien;

  E. Don's Towing acting to acquire ownership by terminating all property interests in a vehicle; and

  F. The eventual sale of the vehicle.

42. Any notification(s) transmitted by HPA and/or Don's Towing relating to the conduct referenced in ¶ 41 (A)-(F) does not satisfy the constitutional due process requirement of notice, because these communications are notifications of HPA's and/or Don's Towing's unilateral demands, not notice of an opportunity to be heard (which does not occur).

43. These actions, all taken in accordance with HPA's and Don's Towing's regular policies and customs for seizing and disposing of seized motor vehicles, violate the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

44. HPA and Don's Towing knew or should have known that their actions violated the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

### COUNT I
### Violation of Civil Rights Pursuant to title 42 U.S.C. § 1983
### (Deprivation of Property by Unreasonable Seizure)
### (as against all Defendants)

45. Santander realleges and incorporates herein by reference the allegations set forth in the prior paragraphs herein.

46. Santander is the holder of a protected property interest in the Vehicle.

47. Defendants meaningfully interfered with Santander's protected interest in the Vehicle by towing it, detaining it, withholding possession from Santander, demanding payment and other conditions for release of it, and threatening to ultimately take ownership of it free from Santander's lien.

48. By these actions, Defendants acted under color of law to seize the Vehicle within the meaning of the Fourth Amendment to the United States' Constitution.

49. Defendants' seizure of the Vehicle was unaccompanied by a warrant.

50. Defendants' seizure of the Vehicle was unaccompanied by any legitimate exception to the warrant requirement. Alternatively, to the extent the initial seizure was accompanied by any arguably legitimate exception to the warrant requirement, it was carried out in an unreasonable manner of execution insofar as the seizure exceeded the scope necessary to complete any legitimate task associated with the purported warrant exception for which the vehicle was seized.

51. Defendants' seizure of the Vehicle was therefore unreasonable in violation of the Fourth Amendment to the United States' Constitution.

52. Defendants' unreasonable seizure of the Vehicle was accomplished in accordance with the Defendants' standard policy and/or custom for the handling and disposal of seized vehicles.

53. As a direct and proximate result of HPA's and Don's Towing's violation of Santander's Constitutional right to be free from unreasonable seizures, Santander has suffered damages based upon the lost value of the Vehicle, loss of use of the Vehicle, the lost revenue stream from its finance of the Vehicle, and other damages.

54. Santander is, therefore, entitled to relief under 42 U.S.C. § 1983.

**WHEREFORE,** Santander prays for judgment against Defendants HPA and Don's Towing, jointly and severally, for immediate possession of the Vehicle, actual damages, consequential damages, punitive damages (as to Don's Towing only), statutory damages, fees and costs of suit, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, and such other and further relief as the Court deems just and proper.

### COUNT II
### Violation of Civil Rights Pursuant to title 42 U.S.C. § 1983
### (Deprivation of Property Without Due Process of Law)
### (as against all Defendants)

55. Santander realleges and incorporates herein by reference the allegations set forth in the prior paragraphs herein.

56. Santander is the holder of a protected property interest in the Vehicle.

57. HPA and/or Don's Towing's actions resulted in the deprivation of Santander's protected property interests in the Vehicle.

58. Neither HPA nor Don's Towing had any mechanism for, nor did either secure, review of any of either Defendants' actions in relation to the Vehicle before a judge or other neutral decisionmaker.

59. Neither HPA nor Don's Towing provided Santander for an opportunity to be heard in relation to any of either Defendants' actions in relation to the Vehicle in any venue at any time.

60. Because neither HPA nor Don's Towing provided any mechanism for, nor did either secure, review of any of either Defendants' actions in relation to the Vehicle by a judge or other neutral decisionmaker, neither provided Santander with constitutionally adequate notice of that non-existent hearing procedure.

61. The manner in which Santander became aware of HPA and Don's Towing's seizure of the Vehicle, as well as Don's Towing's continued possession of the Vehicle, did not constitute adequate notice for the purposes of due process.

62. Defendants' deprivation of Santander's rights in the Vehicle was therefore accomplished without due process of law in violation of the Fourteenth Amendment to the United States Constitution.

63. Defendants' deprivations of Santander's rights in the Vehicle were accomplished in accordance with the Defendants' standard policy and/or custom for the handling and disposal of seized vehicles.

64. As a direct and proximate result of HPA's and Don's Towing's violation of Santander's Constitutional right to be free from deprivations without due process of law, Santander has suffered damages based upon the lost value of the Vehicle, loss of use of the Vehicle, the lost revenue stream from its finance of the Vehicle, and other damages.

65. Santander is, therefore, entitled to relief under 42 U.S.C. § 1983.

**WHEREFORE,** Santander prays for judgment against Defendants HPA and Don's Towing, jointly and severally, for immediate possession of the Vehicle, actual damages, consequential damages, punitive damages (as to Don's Towing only), statutory damages, fees and costs of suit, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, and such other and further relief as the Court deems just and proper.

## COUNT III
### Violation of Civil Rights Pursuant to title 42 U.S.C. § 1983
### (Taking of Property Without Just Compensation)
### (as against HPA)

66. Santander realleges and incorporates herein by reference the allegations set forth in the prior paragraphs herein.

67. Santander is the holder of a protected property interest in the Vehicle.

68. HPA compensated Don's Towing, in whole or in part, by turning over possession of the Vehicle to Don's Towing, who lawfully possessed the Vehicle only by virtue of having obtained it from HPA.

69. Don's Towing accepted the Vehicle as compensation, in whole or in part, for the services it provided to HPA, namely the towing and storage of the Vehicle that HPA had seized.

70. HPA destroyed Santander's priority lien in the Vehicle, and its possessory rights pursuant to its contract with its Customer, by turning over the Vehicle to Don's Towing and permitting it to assert a possessory lien that both Defendants asserted took priority over Santander's lien and prevented Santander from exercising its contractual possessory rights in the Vehicle.

71. HPA thereby took Santander's interests in the Vehicle—its right to possession of the Vehicle and its lien priority in the Vehicle—for a public use.

72. HPA did not compensate Santander for the taking of its interests in the Vehicle.

73. HPA therefore took Santander's property for public use without just compensation in violation of the takings clause of the Fifth Amendment to the United States' Constitution.

74. HPA's taking of Santander's rights in the Vehicle was accomplished in accordance with HPA's standard policy and/or custom for the handling and disposal of seized vehicles.

75. As a direct and proximate result of HPA's violation of Santander's Constitutional right to be free from takings without just compensation, Santander has suffered damages based upon the lost value of the Vehicle, loss of use of the Vehicle, the lost revenue stream from its finance of the Vehicle, and other damages.

76. Santander is, therefore, entitled to relief under 42 U.S.C. § 1983.

**WHEREFORE,** Santander prays for judgment against Defendant HPA for immediate possession of the Vehicle, actual damages, consequential damages, statutory damages, fees and costs of suit, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, and such other and further relief as the Court deems just and proper.

### COUNT IV
### Replevin
### (as against Don's Towing only)

77. Santander realleges and incorporates herein by reference to the allegations set forth in the prior points herein.

78. Santander holds a valid lien in the Vehicle and is entitled to possession pursuant to its retail installment contract with the Customer.

79. Santander has demanded that Don's Towing surrender the Vehicle to Santander's possession.

80. Don's Towing has refused, and continues to refuse, to surrender the Vehicle to Santander's possession.

81. Santander is entitled to an order requiring Don's Towing to immediately turn over possession of the Vehicle to Santander.

**WHEREFORE**, Santander prays for judgment against Defendant Don's Towing for immediate possession of the Vehicle, actual damages, consequential damages, punitive damages, fees and costs of suit, including reasonable attorneys' fees, and such other and further relief as the Court deems just and proper.

## COUNT V
### Conversion
### (as against Don's Towing only)

82. Santander incorporates herein by reference the allegations set forth in the above paragraphs, as if fully set forth herein.

83. Santander has a lien in the Vehicle, and in accordance with its rights under its retail installment contract with the Customer, has become entitled to immediate possession of the Vehicle.

84. Don's Towing has refused, and continues to refuse, to surrender possession of the Vehicle to Santander.

85. By these actions, Don's Towing has purposefully, knowingly and/or intentionally exercised dominion and control over the Vehicle, wrongfully interfering with Santander's rights to possession of the Vehicle.

14

86. Santander has suffered, and continues to suffer, damages as a result of Don's Towing's actions.

**WHEREFORE**, Santander prays for judgment against Defendant Don's Towing for actual damages, consequential damages, punitive damages, fees and costs of suit, including reasonable attorneys' fees, and such other and further relief as the Court deems just and proper.

### COUNT VI
### Tortious Interference
### (as against Don's Towing only)

87. Santander incorporates herein by reference the allegations set forth in the above paragraphs, as if fully set forth herein.

88. Don's Towing wrongful actions as set forth above constitute a knowing and intentional tortious interference with Santander's contractual relations and/or prospective economic advantage with respect to the Vehicle.

89. Santander has suffered, and continues to suffer, damages as a result of Don's Towing actions.

**WHEREFORE**, Santander prays for judgment against Defendant Don's Towing for actual damages, consequential damages, punitive damages, fees and costs of suit, including reasonable attorneys' fees, and such other and further relief as the Court deems just and proper.

Dated: April 10, 2024                     **NORRIS, McLAUGHLIN, PA**
                                          Attorneys for Plaintiff

                                          By:  /s/  Rebecca Price
                                          Rebecca J. Price, Esquire
                                          Attorney ID #206182
                                          515 W. Hamilton St., Suite 502
                                          Allentown, PA 18101
                                          Ph: 610-391-1800   Fax: 610-391-1805
                                          rprice@norris-law.com
                                          Counsel for Plaintiff