UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SANTANDER CONSUMER USA, INC., <br><br> Plaintiff, <br> v. <br><br> THE CITY OF HARRISBURG, PA and SP PLUS CORPORATION, <br><br> Defendants. | (Electronically Filed) <br><br> Civil Case No.: 1:24-CV-00620-DFB <br><br> **SECOND AMENDED COMPLAINT** |

Plaintiff, Santander Consumer USA, Inc. ("Santander"), as and for its Complaint against Defendants, The City of Harrisburg ("Harrisburg") and SP Plus Corporation ("SP Plus"), alleges:

### NATURE OF ACTION

1. Harrisburg regularly seizes vehicles as part of its law enforcement activity but has no constitutionally appropriate procedure for disposing of seized vehicles consistent with the basic due process requirements of notice and a hearing. Instead, Harrisburg (on its own and through its parking enforcement sub-contractor, SP plus), employs the outdated and constitutionally unsound practice of summarily turning over control seized vehicles to the private company that towed and stored the vehicle when Harrisburg seized it. In this regard, Harrisburg's policy is to enlist a garage to tow and store vehicles and allow those garages to lien and/or sell the vehicle as a means to cover the costs of towing and storage.

2. Harrisburg's policy and practice of summarily turning over seized vehicles to private tow companies is a joint enterprise from which Harrisburg benefits by avoiding the cost of preserving the seized vehicles and by avoiding the cost of having to pay for towing services, because the tow company accepts the vehicle as compensation for the services it renders to Harrisburg in lieu of money. The tow company benefits by using its control over the vehicle

(created under mantle of authority from Harrisburg) to profit by selling the vehicle or by conditioning release of the vehicle upon payment of money to the tow company.

3.      Here, after seizing a vehicle on which Santander holds a lien, Harrisburg afforded no due process to Santander and instead summarily disposed of its interests in that vehicle by giving it to Don's Towing as payment for the services that Harrisburg had contracted Don's Towing to provide. Don's Towing accepted the vehicle from Harrisburg as compensation, asserted an *ex parte* lien for those services, demanded that Santander satisfy that *ex parte* lien—which Don's Towing insisted took priority over Santander's lien—before it would relinquish possession of Santander's collateral. At no time was Santander afforded notice, a hearing, or just compensation for Harrisburg's taking of Santander's collateral.

## JURISDICTION AND VENUE

4.      This is a civil rights action pursuant to 42 U.S.C. §§ 1983 and 1988 for deprivation of Santander's rights secured by the Fourth, Fifth and the Fourteenth Amendments to the United States Constitution, and accordingly jurisdiction is conferred on this Court by 28 U.S.C. §§ 1343(a)(3) and 1343(a)(4), as well as 28 U.S.C. § 1331.

5.      The remaining causes of action are appropriate pursuant to 28 U.S.C. § 1367 for interrelated state law claims that arise from the occurrences giving rise to the Federal claims, which have a common nucleus of operative fact.

6.      Venue lies in the Court pursuant to 28 U.S.C. § 1391), because the Defendants reside in this district, and 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## **PARTIES**

7. Plaintiff Santander is a corporation incorporated in the State of Illinois in the business of taking assignments of retail installment contracts and holding the associated lien interests in vehicles, including being the duly perfected lienholder in the vehicle, which is the subject of this action, a 2019 Ram bearing VIN: 1C6RR7TT2KS710656 (the "Vehicle").

8. Defendant Harrisburg is a city organized and existing under the laws of the Commonwealth of Pennsylvania. Harrisburg, through its office of parking enforcement, controls the enforcement of outstanding parking citations issued within the boundaries of The City of Harrisburg.

9. Defendant SP Plus is, upon information and belief, a provider of parking management services, incorporated in the State of Illinois, and is engaged, among other things, in enforcement of municipal parking codes, including in Harrisburg.

## **FACTS**

**SP Plus's roll in parking enforcement in Harrisburg**

10. On information and belief, in 2013, Harrisburg entered into a Parking Enforcement Agreement with non-party PK Harris Advisors, Inc., by which Harrisburg assigned the responsibility for parking enforcement (and at least a portion of the revenue therefrom).

11. On information and belief, in 2013, PK Harris Advisors Inc., assigned its rights and responsibilities under the Parking Enforcement Agreement to SP Plus.

12. On information and belief, thereafter, during all time periods relevant to this litigation, SP Plus was the primary entity responsible for enforcement of parking regulations in Harrisburg.

13. On information and belief, although Harrisburg no longer maintained a parking enforcement department, Harrisburg Police continue to maintain responsibility for parking enforcement, and are authorized to issue citations and/or order vehicles to be towed from the public streets of Harrisburg.

14. On information and belief, city officials in Harrisburg, to include Harrisburg police, coordinate with SP Plus for enforcement of parking regulation in Harrisburg.

15. SP Plus, in enforcing parking regulations in Harrisburg, jointly act with Harrisburg and perform a function traditionally reserved for the state, *i.e.* issuance of parking summonses and seizure of vehicles which violate parking regulations regarding parking on public property.

**Santander's interest in the Vehicle**

16. Santander holds a duly perfected security interest in the Vehicle.

17. Before October 23, 2023, and before any other facts relevant to this action, non-party Courtney White (the "Customer") entered into a retail installment contract to finance the purchase of the Vehicle, which contract was assigned to Santander. By virtue of that transaction, Santander obtained its perfected security interest in the Vehicle.

18. Before, on, and after October 23, 2023, Santander held and continues to hold a first priority lien interest in the Vehicle, which has been duly recorded on the title to the Vehicle.

19. Before October 23, 2023, the Customer defaulted on the payment obligations under the retail installment contract, thereafter, entitling Santander to immediate possession of the Vehicle.

20. By virtue of Harrisburg's seizure of the Vehicle, and by virtue of amounts Don's Towing claimed by way of possessory lien on the Vehicle, the Customer was also and further in

4

non-monetary default of the terms of the retail installment contract, thereafter, also further entitling Santander to immediate possession of the Vehicle.

**Harrisburg seized the Vehicle, in which Santander held a protected interest, and gave it to Don's Towing for disposal**

21. On or about October 23, 2023, Don's Towing actively and regularly towed and stored vehicles at the direction of Harrisburg police officers acting in the regular course of their duties as law enforcement officers.

22. On or about October 23, 2023, SP Plus, pursuant to the Parking Enforcement Agreement, and under the auspices of the authority of Harrisburg, took custody of the Vehicle by placing a mechanical "boot" on the Vehicle to immobilize it.

23. Upon information and belief, the Vehicle was legally parked but booted solely due to outstanding parking tickets and/or other unpaid, but unadjudicated, vehicle and traffic violations.

24. SP Plus placed a document on the Vehicle stating that the "Vehicle has been immobilized… for outstanding parking citations, City of Harrisburg Code of Ordinances; Part 5, Chapter 3-130 (Stopping, Standing, Parking)." It further indicated that "Arrangements for release must be made within 48 hours," specifically meaning "[p]ayment for all past due parking citations must be made" as well as "a $75 Immobilization Fee." The document stated "Failure to make arrangements within 48 hours will result in the vehicle being towed," and "[t]owing and storage fees will be imposed."

25. This document was not provided to Santander.

26. Santander had no involvement with or knowledge of the operation of the Vehicle at the time it was immobilized by Harrisburg and/or SP Plus.

27. When outstanding parking tickets were not paid, SP Plus, pursuant to the Parking Enforcement Agreement, instructed Don's Towing to tow it from the roadway and store it at Harrisburg's direction.

28. Well after October 23, 2023, Santander discovered that the Vehicle had been impounded.

29. Santander received a document dated April 3, 2024—163 days after the Vehicle had initially been immobilized—that stated the "Vehicle was declared abandoned by Harrisburg city police department… and is now being held by the salvor identified below," being "dons towing."

30. The Vehicle was not abandoned by Santander and, upon information and belief, was not abandoned at all.

31. Upon learning that the Vehicle was impounded, Santander demanded that the Vehicle be released to it, and Don's Towing refused unless Santander paid the fees demanded by Don's Towing in order to recover the Vehicle.

32. When Santander contacted Don's Towing to recover the Vehicle, Don's Towing demanded payment of towing and storage charges in the amount of $4,150.00 as a condition for release of the Vehicle.

33. Don's Towing asserted that it was able to detain the Vehicle from Santander because Don's Towing claimed a lien on the Vehicle for towing and storage charges.

34. There is no law which requires Santander to pay Harrisburg's towing and storage bill for Don's Towing's alleged services.

35. To the extent SP Plus or Harrisburg seek to rely on any Pennsylvania state law or local ordinance to justify their conduct, these laws are unconstitutional as applied to the circumstances.

36. Santander then contacted Harrisburg and demanded possession of the vehicle. Harrisburg refused to release the vehicle unless Santander paid Harrisburg $8,600.00 for parking tickets allegedly charged to the Customer in relation to the Vehicle, in addition to Don's Towing's fees as Don's Towing had demanded.

37. Santander did not pay the fees demanded by Harrisburg and Don's Towing, and Harrisburg and Don's Towing refused to release the Vehicle to Santander.

38. Harrisburg benefited from Don's Towing's detention of the Vehicle to secure payment, in that Harrisburg obtained Don's Towing's impound storage services, as well as Don's Towing's towing services to clear the roadway, with no payment (or reduced payment) of money from Harrisburg to Don's Towing.

39. SP Plus only seized the Vehicle (by placing a boot on it) by virtue of its relationship with Harrisburg to enforce parking regulations. SP Plus had no other right to immobilize the Vehicle and/or remove the Vehicle from the roadway and hold it against anyone. SP Plus therefore acted under color of law when it seized the Vehicle and caused it to be towed, stored, and/or disposed of by Don's Towing.

**Harrisburg's and SP Plus's regular policies, customs and/or practices which were applied to the Vehicle**

40. Harrisburg and SP Plus's conduct in relation to Santander and the Vehicle on and after October 23, 2023, comported with both Harrisburg's and SP Plus's regular policies, customs and/or practices for the handling of Vehicles encountered and impounded under the same or similar circumstances.

7

41. Harrisburg carries out its essential functions through its own enforcement officers, who, among other things, seize vehicles for a variety of reasons including parking violations.

42. Harrisburg delegates a portion of the performance of these essential functions to SP Plus and to tow companies. Specifically, Harrisburg police utilize SP Plus to manage the administrative portion of their parking enforcement program, and towing companies to tow away, store and dispose of vehicles seized by Harrisburg acting in the course of their duties as law enforcement officers while enforcing past-due parking tickets. In essence, SP Plus and towing companies are Harrisburg's vehicle impound contractors for the area relevant to this action.

43. Pursuant to this relationship, Harrisburg exercises governmental authority to seize vehicles in concert with SP Plus and towing companies.

44. Regardless of the reason for Harrisburg's initial seizure of a given vehicle, Harrisburg does not return those vehicles to a person with a preexisting property interest when the justification for Harrisburg's seizure has passed. Instead, Harrisburg, through SP Plus, places seized vehicles in the possession of its tow operators, for storage and ultimate disposal, permitting the assertion of an *ex parte* possessory lien to secure payment of charges relating to the towing, storage, and disposal.

45. Tow operators accept the seized vehicles from SP Plus and Harrisburg—which vehicles Harrisburg and SP Plus do not own—as either partial or total payment for the towing and storage services tow operators provide to Harrisburg.

46. Rather than receiving monetary compensation from Harrisburg and SP Plus for the services Harrisburg has contracted tow operators to provide, tow operators instead impresses

an *ex parte* possessory lien for towing and storage fees, which it claims supersedes any other persons' rights in these vehicles.

47. After assessing an *ex parte* possessory lien on impounded vehicles, Harrisburg and tow operators refuse to return possession of the vehicles to any other person, even those with pre-existing property rights in the vehicles, while claiming additional daily storages charges.

48. To effectuate eventual disposal of an impounded vehicle, Harrisburg and the tow companies threaten to sell the vehicle unless their demands are met.

49. To effectuate eventual disposal of an impounded vehicle, Defendants insist persons with preexisting property interests satisfy Defendant's *ex parte* possessory lien, and further asserts that if this unilateral condition is not satisfied, Defendants can take title to the impounded vehicles and eliminate all other persons interest in those vehicles.

50. To effectuate eventual disposal of an impounded vehicle, Harrisburg eventually "declares" that a vehicle has been "abandoned," even when a vehicle is not abandoned, merely because persons with interests in the vehicle has not met Defendants' demands.

51. SP Plus and Harrisburg benefit from tow operators assertion of an *ex parte* lien on, and eventual sale of, seized vehicles. Without the tow operators' conduct, Harrisburg and/or SP Plus would be forced to pay monetary consideration to tow operators for the services the provide. Harrisburg and SP Plus instead compensate them with possession and authority to assert a lien on the impounded vehicles. Moreover, upon information and belief, tow operators pay a portion of the proceed they obtain from others back to Harrisburg and/or SP Plus as part of their agreement(s) with Harrisburg.

52. It is Harrisburg's and SP Plus's regular policy and custom, in the course of the above-described conduct, to not obtain a warrant for any of the following actions (for which no valid exception to the warrant requirement exists):

    A. The initial seizure of a vehicle;

    B. The turnover of possession of a vehicle to Don's Towing;

    C. The decision by Harrisburg and/or SP Plus to continue to detain vehicles after the initial reason for the seizure has passed;

    D. The decision of tow operators to assert an *ex parte* possessory lien and the amount of that lien;

    E. Tow operators acting to acquire ownership by terminating all property interests in vehicles; and

    F. The eventual sale of vehicles.

53. Even if the initial seizure of the vehicles in question were made under a valid exception to the Fourth Amendment's warrant requirement, a (possibly) valid initial warrantless seizure does not justify any action Harrisburg or SP Plus decide to take thereafter, as referenced in ¶ 52 (B-F), *supra*. Rather, Harrisburg and SP Plus's subsequent actions render the seizures unreasonable in their manner of execution, even if done with an initially valid exception to the warrant requirement.

54. It is also Harrisburg's and SP Plus's regular policy and custom, in the course of the above-described conduct, to not provide any form of constitutionally adequate notice, nor any hearing whatsoever, in relation to any of the following actions:

    A. The initial seizure of a vehicle;

    B. The turnover of possession of a Vehicle to a tow operator;

    C. The decision by Harrisburg, SP Plus, and/or a tow operator to continue to detain vehicles after the initial reason for the seizure has passed;

D.     The decision of tow operators to assert an *ex parte* possessory lien and the amount of that lien;

E.     Tow operators acting to acquire ownership by terminating all property interests in a vehicle; and

F.     The eventual sale of the vehicle.

55. Any notification(s) transmitted by Harrisburg and/or SP Plus relating to the conduct referenced in ¶ 54 (A)-(F) does not satisfy the constitutional due process requirement of notice, because these communications are notifications of Harrisburg's and/or the tow operators' unilateral demands, not notice of an opportunity to be heard (which does not occur).

56. These actions, all taken in accordance with Harrisburg's and Don's Towing's regular policies and customs for seizing and disposing of seized motor vehicles, violate the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

57. Harrisburg and Don's Towing knew or should have known that their actions violated the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

### COUNT I
### Violation of Civil Rights Pursuant to title 42 U.S.C. § 1983
### (Deprivation of Property by Unreasonable Seizure)
### (as against all Defendants)

58. Santander realleges and incorporates herein by reference the allegations set forth in the prior paragraphs herein.

59. Santander is the holder of a protected property interest in the Vehicle.

60. Defendants meaningfully interfered with Santander's protected interest in the Vehicle by towing it, detaining it, withholding possession from Santander, demanding payment and other conditions for release of it, and threatening to ultimately take ownership of it free from Santander's lien.

61. By these actions, Defendants acted under color of law to seize the Vehicle within the meaning of the Fourth Amendment to the United States' Constitution.

62. Defendants' seizure of the Vehicle was unaccompanied by a warrant.

63. Defendants' seizure of the Vehicle was unaccompanied by any legitimate exception to the warrant requirement. Alternatively, to the extent the initial seizure was accompanied by any arguably legitimate exception to the warrant requirement, it was carried out in an unreasonable manner of execution insofar as the seizure exceeded the scope necessary to complete any legitimate task associated with the purported warrant exception for which the vehicle was seized.

64. Defendants' seizure of the Vehicle was therefore unreasonable in violation of the Fourth Amendment to the United States' Constitution.

65. Defendants' unreasonable seizure of the Vehicle was accomplished in accordance with the Defendants' standard policy and/or custom for the handling and disposal of seized vehicles.

66. As a direct and proximate result of Harrisburg's and Don's Towing's violation of Santander's Constitutional right to be free from unreasonable seizures, Santander has suffered damages based upon the lost value of the Vehicle, loss of use of the Vehicle, the lost revenue stream from its finance of the Vehicle, and other damages.

67. Santander is, therefore, entitled to relief under 42 U.S.C. § 1983.

**WHEREFORE,** Santander prays for judgment against Defendants Harrisburg and SP Plus, jointly and severally, for immediate possession of the Vehicle, actual damages, consequential damages, punitive damages (as to SP Plus only), statutory damages, fees and costs

of suit, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, and such other and further relief as the Court deems just and proper.

## COUNT II
### Violation of Civil Rights Pursuant to title 42 U.S.C. § 1983
### (Deprivation of Property Without Due Process of Law)
### (as against all Defendants)

68. Santander realleges and incorporates herein by reference the allegations set forth in the prior paragraphs herein.

69. Santander is the holder of a protected property interest in the Vehicle.

70. Harrisburg and/or SP Plus's actions resulted in the deprivation of Santander's protected property interests in the Vehicle.

71. Neither Harrisburg nor SP Plus had any mechanism for, nor did either secure, review of any of either Defendants' actions in relation to the Vehicle before a judge or other neutral decisionmaker.

72. Neither Harrisburg nor SP Plus provided Santander for an opportunity to be heard in relation to any of either Defendants' actions in relation to the Vehicle in any venue at any time.

73. Because neither Harrisburg nor SP Plus provided any mechanism for, nor did either secure, review of any of either Defendants' actions in relation to the Vehicle by a judge or other neutral decisionmaker, neither provided Santander with constitutionally adequate notice of that non-existent hearing procedure.

74. The manner in which Santander became aware of Harrisburg and SP Plus's seizure of the Vehicle, as well as Don's Towing's continued possession of the Vehicle, did not constitute adequate notice for the purposes of due process.

75. Defendants' deprivation of Santander's rights in the Vehicle was therefore accomplished without due process of law in violation of the Fourteenth Amendment to the United States Constitution.

76. Defendants' deprivations of Santander's rights in the Vehicle were accomplished in accordance with the Defendants' standard policy and/or custom for the handling and disposal of seized vehicles.

77. As a direct and proximate result of Harrisburg's and SP Plus's violation of Santander's Constitutional right to be free from deprivations without due process of law, Santander has suffered damages based upon the lost value of the Vehicle, loss of use of the Vehicle, the lost revenue stream from its finance of the Vehicle, and other damages.

78. Santander is, therefore, entitled to relief under 42 U.S.C. § 1983.

**WHEREFORE,** Santander prays for judgment against Defendants Harrisburg and SP Plus, jointly and severally, for immediate possession of the Vehicle, actual damages, consequential damages, punitive damages (as to SP Plus only), statutory damages, fees and costs of suit, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, and such other and further relief as the Court deems just and proper.

## COUNT III
### Violation of Civil Rights Pursuant to title 42 U.S.C. § 1983
### (Taking of Property Without Just Compensation)
### (as against Harrisburg)

79. Santander realleges and incorporates herein by reference the allegations set forth in the prior paragraphs herein.

80. Santander is the holder of a protected property interest in the Vehicle.

81. Harrisburg and SP Plus compensated Don's Towing, in whole or in part, by turning over possession of the Vehicle to Don's Towing, who lawfully possessed the Vehicle only by virtue of having obtained it from Harrisburg and SP Plus.

82. Don's Towing accepted the Vehicle as compensation, in whole or in part, for the services it provided to Harrisburg and SP Plus, namely the towing and storage of the Vehicle that Harrisburg and SP Plus had seized.

83. Harrisburg and SP Plus destroyed Santander's priority lien in the Vehicle, and its possessory rights pursuant to its contract with its Customer, by turning over the Vehicle to Don's Towing and permitting it to assert a possessory lien that both Defendants asserted took priority over Santander's lien and prevented Santander from exercising its contractual possessory rights in the Vehicle.

84. Harrisburg and SP Plus thereby took Santander's interests in the Vehicle—its right to possession of the Vehicle and its lien priority in the Vehicle—for a public use.

85. Harrisburg and SP Plus did not compensate Santander for the taking of its interests in the Vehicle.

86. Harrisburg and SP Plus therefore took Santander's property for public use without just compensation in violation of the takings clause of the Fifth Amendment to the United States' Constitution.

87. Harrisburg and SP Plus's taking of Santander's rights in the Vehicle was accomplished in accordance with Harrisburg's standard policy and/or custom for the handling and disposal of seized vehicles.

88. As a direct and proximate result of Harrisburg and SP Plus's violation of Santander's Constitutional right to be free from takings without just compensation, Santander

has suffered damages based upon the lost value of the Vehicle, loss of use of the Vehicle, the lost revenue stream from its finance of the Vehicle, and other damages.

89.     Santander is, therefore, entitled to relief under 42 U.S.C. § 1983.

**WHEREFORE**, Santander prays for judgment against Defendant Harrisburg for actual damages, consequential damages, fees and costs of suit, including reasonable attorneys' fees, and such other and further relief as the Court deems just and proper.

Dated: May 6, 2025              **NORRIS, McLAUGHLIN, PA**
                                Attorneys for Plaintiff

                                By:  _/s/Micah Brown_
                                     Micah Brown, Esquire
                                     Attorney ID #326075
                                     515 W. Hamilton St., Suite 502
                                     Allentown, PA 18101
                                     Ph: 610-391-1800   Fax: 610-391-1805
                                     mbrown@norris-law.com
                                     Counsel for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SANTANTDER CONSUMER USA, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE CITY OF HARRISBURG, PA and DON'S TOWING. <br><br> Defendant. | File No.: 1:24-CV-00620-CCC |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of Plaintiff's Second Amended Complaint has been served upon all other parties at the address(es) below via First Class Mail and/or electronic filing, this 6th day of May, 2025:

Fred B. Buck
Rawle & Henderson LLP
Centre Square West
1500 Market Street
Ste 19th Floor
Philadelphia, PA 19102
215-575-4317
fbuck@rawle.com

                          **NORRIS MCLAUGHLIN, P.A.**

                          By: /s/Rebecca Price
                          Rebecca J. Price, Esq.
                          Attorney I.D. No. 206182
                          515 Hamilton Street, Suite 502
                          Allentown, PA 18101
                          (610) 391-1800/(f) (610) 391-1805
                          rprice@norris-law.com
                          *Attorney for Plaintiff*